Lyda Ann Q. THOMAS, et al.,
Plaintiffs, Appellants,

v.

SUGARLAND INDUSTRIES, INC., a
Delaware corporation,
Defendant, Appellee,

and

United States National Bank of Galveston, Trustee, Intervenor, Appellee.

Supreme Court of Delaware.

Submitted May 12, 1981.

Decided June 17, 1981.

Andrew B. Kirkpatrick, Jr., Richard L. Sutton (argued) and William T. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Dempsey J. Prappas and Brantly Harris, of Prappas, Moncure, Harris & Eidman, Houston, Tex., of counsel, for plaintiffs-appellants.

Charles F. Richards, Jr. (argued) and Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, and Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, for defendant-appellee.

Before DUFFY, QUILLEN and HORSEY, JJ.

PER CURIAM:

The controversy in this appeal concerns the payment of counsel fees to the attorneys for plaintiffs (referred to herein as "petitioners"). In a prior appeal, we determined the amount of those fees and remanded the case to the Court of Chancery to implement the ruling. *Sugarland Industries, Inc. v. Thomas*, Del.Supr., 420 A.2d 142 (1980). After remand, the Court of Chancery entered an order providing for the payment of petitioners' disbursements and certain other amounts authorized and required by our decision.

Petitioners have docketed this appeal contending that the Court of Chancery incorrectly adopted a new technique for determining "when" certain benefits are realized by Sugarland for fee purposes. A second contention is made regarding the legal rate of post-judgment interest which should be applied.

Given the long history of the controversy and the several opinions announced here and in the Trial Court, we add to the literature only to the minimal extent necessary to make our ruling.

■ The fundamental and critical issue in the prior appeal related to the *amount* of the fees to be allowed to petitioners. The briefs of counsel and ruling by the Court concentrated on the size of the fees, not on when they would be payable. While the receipt by Sugarland of benefits which would trigger petitioners' right to receive partial payment of fees may have been litigated to some extent in the Court of Chancery and/or in this Court, we are not persuaded that any ruling on the issue became the law of the case.

Having said that, however, we are satisfied that, in his opinion and order fixing the time for payment of fees, the Chancellor fairly read and applied our prior opinion. This is to say that the fees allowed by us were based on the payment of principal (actual by the Gerald D. Hines Interest, and theoretical by White and Hill) under the "if, as and when" formula. When such payments of principal are received by Sugarland, then, at that time, the percentages allowed are due and payable.

■ We recognize that there is some merit to the arguments which petitioners make. Thus they say that Sugarland has already received substantially more in interest payments from the Hines Group than would have been paid had the sale been made to White and Hill under the original

contract; petitioners say that, to the extent of the difference, Sugarland has already received a benefit which should be the basis for payment of the fees that have been allowed. And, they continue, the Chancellor's ruling computing benefits on the basis of both principal and interest was not challenged in the prior appeal.

As to the latter point, we have already determined that the issue is to be decided in this appeal (and the ruling from which it has been taken) wherein counsel and the Court are focusing on the time when payments are due. In the prior opinion we did not determine "when" payments of fees are to be made (although we could have done so).

In determining the amount of fees and reasonable compensation to counsel, our analysis was based entirely on the principal payments for the South Tract. See the computations at 420 *A.2d* 151. The allowed percentages applied to the difference between the two offers resulted in a fee which the Court determined to be fair and reasonable and we specifically refused to increase it because of any additional benefit arising from an increase in interest payments. 420 *A.2d* 153.

That was the fundamental factor in the determination of counsel fees and since they were allowed (as petitioners themselves originally suggested) on an "as, if and when" basis, the Chancellor's determination was proper. Any other approach would necessarily result in a change in the formula on which the amount of the fee was determined and/or an acceleration of fee payments prior to receipt by Sugarland of the sale price which generates the obligation. And consistent with the "as, if and when" approach, if interest were now to be included as a benefit for fee purposes, then the percentage factors would have to be decreased to achieve both reasonableness in the amount of the fee and partial payments thereof after Sugarland has received a payment on principal.

Petitioners also argue that the Chancellor made an unwarranted change from his prior order when he fixed the time at which credit is given for the theoretical receipt by Sugarland of White and Hill payments for the purpose of calculating benefits. We are not persuaded that the Chancellor was bound by the prior order nor that he abused his discretion in entering the order under attack.

Finally, petitioners contend that post-judgment interest on the award of attorney fees should carry interest not at the six percent rate which prevailed when the Chancellor entered his order on May 11, 1979, but at the rate which became effective on May 13, 1980.* The difficulty with that argument is that it comes too late; in the prior appeal the appropriate rate of interest was disputed and, after argument, we specifically held that

"... the Chancellor did not abuse his discretion in denying petitioners prejudgment interest and limiting post-judgment interest to 6%." 420 *A.2d* at 152.

That ruling was made in our opinion dated May 29, 1980. On June 13, 1980 petitioners filed a substantial motion for reargument which did not include the amendment to § 2301. An opinion was docketed deciding the motion and the mandate was issued on August 15, 1980. Under these circumstances, our ruling on the disputed rate of interest is governed by the law-of-the-case doctrine and petitioners are not now entitled to litigate the issue on the basis of the new Statute.

Affirmed.

---

* 6 *Del.C.* § 2301, as amended by 62 *Del.Laws* ch. 239, provides that:

"... judgments entered after the effective date of this Act shall bear interest at the rate in contract sued upon. Where there is no express contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; providing that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time."